**Guy O. DOVE, III, Appellant,**

**Spargos Mining NL, Plaintiff,**

v.

**ATLANTIC CAPITAL CORPORATION, Defendant–Appellee.**

**No. 960, Docket 91–9010.**

United States Court of Appeals, Second Circuit.

Argued Feb. 5, 1992.

Decided April 28, 1992.

Daryl J. Hudson, III, Washington, D.C., for appellant.

H. Barry Vasios, New York City (Gilbert, Segall and Young, of counsel), for appellee.

Before: OAKES, Chief Judge, MESKILL and CARDAMONE, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York, Patterson, J., citing Guy O. Dove III for contempt of court because of his refusal to comply with a discovery order. Dove contends that the district court had erred in refusing to issue a protective order pursuant to Fed.R.Civ.P. 26(c) and that, therefore, the finding of contempt was erroneous. We conclude that the district court did not abuse its discretion in failing to issue a protective order and thus affirm the order of contempt.

## BACKGROUND

In January 1991 Spargos Mining NL (Spargos), an Australian corporation, commenced the underlying diversity action against Atlantic Capital Corporation (Atlantic), a Delaware corporation. Spargos alleged in its complaint that Claremont Petroleum (Claremont), had deposited eight million Australian Dollars (A$8,000,000) with Atlantic, repayable on demand with interest. Claremont's interest had allegedly been assigned to Spargos. The complaint further alleged that, despite demand for full repayment, Atlantic had repaid only A$6,000,000 and that Atlantic therefore owed Spargos A$2,904,657.35, plus continually accruing interest.

Atlantic asserted several affirmative defenses. Some of these defenses alleged that the deposit was part of a transaction that violated Australian law and was therefore unenforceable. Another affirmative defense alleged that the transfer was intended as security for a loan made by Atlantic to an entity called Consulmar Stiftung. In order to support these defenses, Atlantic sought discovery from Dove, who, at the time of the Claremont transaction, was a member of the investment committee of Atlantic's then-parent company, Clarendon Group Ltd.

Before Spargos brought this action, Atlantic had brought an action against Dove and others in the United Kingdom (the UK

litigation). The complaint in that action alleged, among other things, that Dove had breached his fiduciary duties to Atlantic by negotiating and implementing high risk loans on behalf of Atlantic. Dove presented to the district court a letter from a London solicitor indicating that there is no established practice in the UK of examining potential witnesses under oath prior to trial and that any pretrial discovery in the UK litigation would not occur soon.

Atlantic maintained that it intended to use any relevant discovery material in the UK litigation. Dove therefore requested that the district court issue a protective order preventing Atlantic from using the fruits of discovery in connection with the UK litigation. Dove asserted that, in the absence of such an order, he would be subject to unequal discovery in the UK litigation. This, he argued, was sufficient "good cause" to justify a protective order under Fed.R.Civ.P. 26(c). He further argued that Atlantic sought the discovery in bad faith for the sole purpose of gaining unequal discovery rights in the UK litigation and that the discovery therefore ought not be allowed.

The district court found that Dove had failed to show sufficient good cause for a protective order. The district court therefore ordered discovery to proceed, with the understanding that it would be limited to the transactions related to the instant action. Dove refused to comply with the discovery requests and the district court held him in contempt of court, finding that he had failed to show that discovery would prejudice him. The district court stayed the imposition of sanctions to permit Dove to appeal to this Court.

Dove brought this appeal, contending that the district court erred by refusing to issue a protective order. We disagree and affirm the order citing Dove for contempt.

## DISCUSSION

### 1. Appellate Jurisdiction

■ Generally, federal courts of appeals have jurisdiction only over final decisions of the district courts. 28 U.S.C. § 1291. A non-party witness ordinarily may not appeal directly from an order compelling discovery but must instead defy the order and be found in contempt in order to obtain review of the court's initial order. *See Alexander v. United States*, 201 U.S. 117, 122, 26 S.Ct. 356, 358, 50 L.Ed. 686 (1906) ("This power to punish being exercised the matter becomes personal to the witness and a judgment as to him. Prior to that the proceedings are interlocutory in the original suit."). The finding of contempt sufficiently severs the production order from the underlying case, but the final decision requirement of section 1291 remains. The contempt order itself, in theory, must be final in order to support an appeal.

■ In this case, Dove was adjudged in contempt of court but the imposition of sanctions was stayed and no sanctions were formulated prior to the entry of the stay. We have stated on at least two occasions that a finding of contempt unaccompanied by sanctions is not final and thus cannot support an appeal. *See In re Irving*, 600 F.2d 1027, 1031 n. 1 (2d Cir.) ("[I]t is true that a contempt order is not final until sanctions have been imposed."), *cert. denied*, 444 U.S. 866, 100 S.Ct. 137, 62 L.Ed.2d 89 (1979); *Comptone Co. v. Rayex Corp.*, 251 F.2d 487, 488 (2d Cir.1958) (per curiam) ("[N]o penalty has been imposed, and the contempt order remains merely a finding, without judgment thereon, subject to modification, prior to judgment. Since the contempt finding . . . is not a final decision, it is not appealable under 28 U.S.C. § . . . 1291.") (citation omitted); *see also International Silver Co. v. Oneida Community, Ltd.*, 93 F.2d 437, 440–41 (2d Cir.1938) (order adjudging defendant in contempt but not imposing fine not appealable). Authority from other jurisdictions supports this view as well. *See, e.g., Don's Porta Signs v. City of Clearwater*, 829 F.2d 1051, 1053 n. 7 (11th Cir.1987), *cert. denied*, 485 U.S. 981, 108 S.Ct. 1280, 99 L.Ed.2d 491 (1988); *Petroleos Mexicanos v. Crawford Enterprises*, 826 F.2d 392, 398 (5th Cir.1987); *Motorola v. Computer Displays Int'l*, 739 F.2d 1149, 1154 (7th Cir. 1984); *Weyerhaeuser Co. v. Int'l Long-*

*shoremen's and Warehousemen's Union, Local 21,* 733 F.2d 645, 645 (9th Cir.1984); *United States Steel v. Fraternal Ass'n of Steel Haulers,* 601 F.2d 1269, 1273 (3d Cir. 1979); *SEC v. Naftalin,* 460 F.2d 471, 475 (8th Cir.1972).

As illustrated by this case, requiring the formulation of sanctions prior to appeal makes sense. After we affirm the finding of contempt in this case, any sanction imposed could then be challenged on appeal as an abuse of discretion. *See, e.g., United States v. City of Yonkers,* 856 F.2d 444, 459–60 (2d Cir.1988) (district court abused its discretion in imposing open ended fine that doubled daily and would exceed $1 million per day after two weeks), *rev'd on other grounds sub nom. Spallone v. United States,* 493 U.S. 265, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990). It is just such piecemeal appellate practice, with its concomitant delay of the underlying action, that the final decision rule was designed to prevent. *See Cobbledick v. United States,* 309 U.S. 323, 324–27, 60 S.Ct. 540, 540–42, 84 L.Ed. 783 (1940).

However, as we will explain, our Circuit has adopted a rule allowing for an appeal from a finding of contempt prior to the imposition of sanctions. This rule has its genesis in *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), where the Supreme Court created an exception to the traditional requirement that appeal of a discovery order requires a judgment of contempt. Noting that for a district court to hold the President of the United States in contempt merely in order to trigger appellate review of a court order involving a claim of executive privilege "would present an unnecessary occasion for constitutional confrontation between two branches of the Government," the Supreme Court allowed an appeal directly from a discovery order without even a finding of contempt. *Id.* at 691–92, 94 S.Ct. at 3099.

We later rejected a proposal similarly to dispense with the contempt requirement in all cases in which the government asserts a privilege. *National Super Spuds v. New York Mercantile Exchange,* 591 F.2d 174,

177 (2d Cir.1979). Noting the difficult position in which a government employee is placed when directed by a court to produce information and by his agency supervisors to withhold such information, however, we "softened the requirement of submission to contempt" in such cases. *Id.* at 180. We held that "[w]hen a present or former Government employee makes a non-frivolous assertion of governmental privilege at his agency's request, citation for civil contempt without any other immediate sanction pending prompt application for review will ordinarily suffice" to support an appeal. *Id.*

Nine years later, in *In re Three Grand Jury Subpoenas Dated January 5, 1988,* 847 F.2d 1024 (2d Cir.1988), we transformed the limited exception for government employees asserting a nonfrivolous governmental privilege at the request of a government agency into a "general rule ... that only a citation for contempt, not the imposition of sanctions, is necessary for appellate review." *Id.* at 1028. In that case, an individual and two related businesses were adjudicated in contempt for refusing to permit *in camera* inspection of certain tapes that were the subject of a grand jury subpoena. The contempt order did not state whether the contempt was civil or criminal, nor did it state what sanctions were contemplated. Nonetheless, quoting *Nixon* and citing *National Super Spuds,* we concluded that we had jurisdiction to review the contempt citation and, collaterally, the order requiring the inspection of the evidence.

The posture of this case is fundamentally indistinguishable from that in *Three Grand Jury Subpoenas.* The holding of that case controls here and we therefore acknowledge appellate jurisdiction over this matter.

### 2. *The Denial of the Protective Order*

Dove contends that the district court erred in failing to grant a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. That rule states in pertinent part:

Upon motion by ... the person from whom discovery is sought, and for good cause shown, the court in which the ac-

tion is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

Fed.R.Civ.P. 26(c). Dove argues that he has shown good cause for an order restricting the use of any discovery to the instant action and that use of the discovery in the UK litigation would be oppressive. The district court concluded that Dove had not shown sufficient good cause for a protective order.

■ "The grant and nature of protection is singularly within the discretion of the district court and may be reversed only on a clear showing of abuse of discretion." *Galella v. Onassis*, 487 F.2d 986, 997 (2d Cir.1973) (citation omitted); *see In re American Tobacco Co.*, 880 F.2d 1520, 1530 (2d Cir.1989). This standard applies where the requested order has been denied as well as when it has been granted. *See Penthouse Int'l, Ltd. v. Playboy Enterprises*, 663 F.2d 371, 391 (2d Cir.1981). "Where ... the [discovery is] relevant, the burden is upon the party seeking non-disclosure or a protective order to show good cause." *Id.* (citations omitted). Dove does not argue that the discovery Atlantic seeks is not relevant to Atlantic's affirmative defenses. Therefore, he must show that the district court abused its discretion by finding that he had not demonstrated sufficient good cause to justify a protective order.

Some courts have held that unequal discovery rights in related litigation may justify a protective order or other device designed to prevent abuse of the liberal discovery rules available in federal court. *See, e.g., Snap Lite Corp. v. Stewart Warner Corp.*, 40 F.Supp. 776, 776 (S.D.N.Y. 1941) (federal action initiated to obtain discovery for use in state court); *Campbell v. Eastland*, 307 F.2d 478, 480, 483 (5th Cir. 1962) (federal civil action initiated as tactic to enable plaintiff to gain otherwise unavailable information on criminal case), *cert. denied*, 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963). In each such case the federal action had been brought chiefly for the purpose of exploiting the liberal discovery devices available in federal civil actions.

■ If the district court had found that the affirmative defense in the instant action was interposed for the sole purpose of obtaining information through discovery for use in the UK litigation, it would have been justified in issuing the protective order Dove requested. *See, e.g., Empire Liquor Corp. v. Gibson Distilling*, 2 F.R.D. 247, 248 (S.D.N.Y.1941). However, where the discovery sought is relevant to a good faith defense in the federal case, the mere fact that it may be used in other litigation does not mandate a protective order. *See Cipollone v. Liggett Group*, 113 F.R.D. 86, 91 (D.N.J.1986) ("So long as the initial litigation has not itself been instituted in bad faith for the purpose of obtaining documents for other actions, and so long as the interests of those represented in the initial litigation are being fully and ethically prosecuted, the Federal Rules do not foreclose the collaborative use of discovery."), *mandamus denied*, 822 F.2d 335 (3d Cir.), *cert. denied*, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987).

■ In the instant case Atlantic did not institute this litigation. It merely asserted an affirmative defense of illegality in response to the action for collection of the debt. Dove, as an individual involved in the initial transaction by which the debt was incurred, may possess information relevant to that defense or information reasonably calculated to lead to the discovery of such evidence. Dove does not dispute this. Dove has pointed to nothing in the record from which we could conclude that the district court abused its discretion in finding that Dove had not shown good cause for a protective order. The timing of the assertion of the defense and the relation of the discovery sought to the UK litigation in some circumstances might raise an inference of bad faith sufficient to support a protective order of the type Dove requested. Standing alone, however, they are not enough to compel one.

Dove contends that our decision in *Sperry Rand Corp. v. Rothlein*, 288 F.2d 245 (2d Cir.1961), requires the entry of a pro-

tective order to guard against unequal discovery in the UK litigation. We disagree. In that case we affirmed an order by a district court prohibiting the use of materials obtained through discovery in the federal action in a parallel state court action. We held that the court acted within its discretion in issuing such an order when it "believe[d] that suit [was] being brought elsewhere to undermine a decision already made by the court." *Id.* at 249.

As noted above, the grant or denial of a protective order lies within the sound discretion of the district court. *See Galella,* 487 F.2d at 997. In *Sperry Rand* we held that the district court "acted well within its equitable discretion" in proscribing the use of discovery outside the proceeding, *Sperry Rand,* 288 F.2d at 249; here the district court exercised its discretion not to issue such an order. Nothing in *Sperry Rand* indicates that the district court was required to issue the order that it did.

In this case there is no indication that Atlantic is seeking to circumvent any ruling of the district court. Further, in *Sperry Rand* we expressly disclaimed reliance on Rule 30(b) of the Federal Rules of Civil Procedure, the predecessor to Rule 26(c). *Id.; see* Fed.R.Civ.P. 26(c) Notes of Advisory Committee on Rules—1970 Amendments. It is therefore difficult to see how *Sperry Rand* could be authority for the proposition that a district court is required to issue a protective order under Rule 26(c) in circumstances such as those present in this case.

The district court did not abuse its discretion by failing to issue a protective order preventing the use of the discovery from the instant case in the UK litigation. The finding of contempt was therefore proper.

## CONCLUSION

Although the district court neither formulated nor imposed sanctions to accompany its finding that Dove was in contempt of court, we have appellate jurisdiction over this matter. Because the district court did not abuse its discretion in refusing to issue the requested protective order we uphold the finding of contempt.

The order of the district court is affirmed.