Ruben Victor **CENTENO–BERNUY**, et al., Plaintiffs,

v.

**BECKER FARMS**, et al., Defendants.

No. 01–CV–0839A(SR).

United States District Court, W.D. New York.

Sept. 30, 2003.

Patricia C. Kakalec, Farmworker Legal Services of New York, Inc., Nancy Jean Schivone, Legal Aid Society of Mid–New York, Inc., New Paltz, NY, for Plaintiffs.

Thomas P. Kawalec, Chelus, Herdzik, Speyer, Monte & Pajak, P.C., Buffalo, NY, for Defendants.

## DECISION AND ORDER

SCHROEDER, United States Magistrate Judge.

This matter was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon dispositive motions. Dkt. # 4. Currently before me is plaintiffs motion for a protective order pursuant to Fed. R. Civ. R. 26(c).

Dkt. # 19. For the reasons that follow, plaintiff's motion is **GRANTED**.

## BACKGROUND

Plaintiffs are four migrant agricultural workers suing their former agricultural employers for violations of the Fair Labor Standards act ("FLSA"), the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), the Wagner–Peyser Act, New York Labor Law, New York Real Property Law, New York Human Rights Law and for breach of contract. Dkt. # 14, ¶ 1.[1] For a period of approximately five years, plaintiffs were hired to work at defendants' farm as non-immigrant H–2A workers, where they allege they were underpaid, housed in "dilapidated, unsanitary, and unsafe housing" and illegally charged for transportation and other unauthorized expenses. Dkt. # 14, ¶¶ 2–7, 13.

During the course of discovery, defendants sought information regarding plaintiffs' immigration status, residence and employment subsequent to November 3, 2001, the date plaintiffs ceased working for defendants and vacated the defendants' premises. Dkt. # 28, ¶¶ 3–5. Plaintiffs moved for a protective order on the grounds that "such information was not relevant to the claim or defense of any party" and on the grounds that these requests "were unduly burdensome, oppressive, prejudicial and interposed for an improper purpose, namely, to retaliate against the [p]laintiffs and interfere with their prosecution of this lawsuit." Dkt. # 20, p. 2. Defendants subsequently agreed to refrain from seeking information with respect to plaintiffs' current immigration status. Dkt. # 27, p. 2; Dkt. # 28, ¶ 8. Accordingly, the issue currently before the Court is whether plaintiffs should be required to disclose their current residences and places of employment.

## DISCUSSION AND ANALYSIS

Fed.R.Civ.P. 26(b)(1) provides, in relevant part, that

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . .

---

1. Dkt. # 14 is plaintiffs' first amended complaint.

For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Thus, "[I]n federal actions, discovery should be broad, and all relevant materials which are reasonably calculated to lead to the discovery of admissible evidence should be [discoverable]." *National Cong. for Puerto Rican Rights ex rel. Perez v. City of New York,* 194 F.R.D. 88, 92 (S.D.N.Y.2000) (internal quotation and citations omitted).

However, Fed.R.Civ.P. 26(c) provides that "[u]pon motion by a party ... and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense ...." Thus, once the party seeking discovery has established that the demand seeks relevant information, "the burden is upon the party seeking non-disclosure or a protective order to show good cause." *Dove v. Atlantic Capital Corp.,* 963 F.2d 15, 19 (2d Cir.1992); *Penthouse Int'l, Ltd. v. Playboy Enters.,* 663 F.2d 371, 391 (2d Cir.1981). "When the potential for abuse of procedure is high, the Court can and should act within its discretion to limit the discovery process, even if relevancy is determined." *Topo v. Dhir,* 210 F.R.D. 76, 78 (S.D.N.Y.2002). "[T]he grant or denial of a protective order lies within the sound discretion of the district court." *Dove,* 963 F.2d at 20.

In the instant case, defendants argue that information with respect to the residency and employment of the plaintiffs subsequent to leaving the defendants' premises on November 3, 2001 may allow the defendants to speak with the plaintiffs' neighbors or employers in order to inquire whether the plaintiffs have made comments or admissions with respect to this case and their employment with Becker Farms. Dkt. # 27, p. 8; see Dkt. # 28, ¶ 7.

Plaintiffs respond that their current residence and employment "do not bear on any of the elements of this case, on [p]laintiffs' damages, or on [p]laintiffs' credibility." Dkt. # 30, p. 2. Plaintiffs note that defendants seek this information not to obtain information which is itself relevant, but to enable them to engage in a fishing expedition. Dkt. # 30, p. 2. Even if this Court were to find defendants' demands relevant, plaintiffs assert that responding to demands regarding their residences and employment may "have an 'in terrorem' effect ... which could discourage [p]laintiffs from pursuing their legal rights against [d]efendants." Dkt. # 30, p. 4.

In support of this claim, plaintiffs aver that they have been subject to severe intimidation by Donald Perry, a former owner of Becker Farms who is the father of [d]efendant Melinda Vizcarra and the father-in-law of [d]efendant Oscar Vizcarra. Plaintiffs legitimately fear that Perry will broadcast their whereabouts and employment in an effort to intimidate [p]laintiffs and end their participation in this lawsuit.

Dkt. # 30 p. 5. For example, plaintiffs submit a transcript of a radio broadcast by Mr. Perry in which he claims to have reported plaintiffs to the INS and attempted to inform the INS where plaintiffs could be located and admits to having "been informing other law-enforcement agencies of these illegal aliens." Dkt. # 30, Exh. 1, pp. 2–3, 8–9, 13. Plaintiffs also submits copies of letters written by Mr. Perry to plaintiff's counsel in which Mr. Perry alleges that plaintiffs are members of a terrorist group known as the " 'Shining Path' of Peru" and that they "fit the classic federal terrorist definition of a 'sleeper cell.' " Dkt. # 21, Exh. 2 & 3. Mr. Perry's letters recount his efforts to report plaintiffs to law enforcement agencies and his astonishment as to "why haven't these terrorists/illegal aliens been apprehended and deported?!!" Dkt. # 21, Exh. 2 & 3.

Assuming, *arguendo,* that information regarding plaintiffs' residences and places of employment could lead to evidence relevant to the defense of this action, the Court finds that any such relevance is clearly outweighed by the potential that this information may be used to harass, oppress or intimidate the plaintiffs. The very purpose for which defendants seek this information, *to wit,* to enable them to discuss plaintiffs' allegations

of illegal treatment by their former landlords/employers with plaintiffs' current landlords and/or employers, is inherently intimidating. Moreover, the Court agrees that Mr. Perry's behavior during the pendency of this action demonstrates a real threat of intimidation and harassment against plaintiffs, which would only be exacerbated should plaintiffs be required to disclose their residences and places of employment. Accordingly, the Court finds that plaintiffs' have demonstrated good cause for the issuance of a protective order precluding disclosure of plaintiffs' current residences and places of employment.

### CONCLUSION

For the reasons set forth above, plaintiff's motion for a protective order (Dkt.# 19) is **GRANTED**.

**SO ORDERED.**